[No. 24406. Department Two. August 7, 1933.]

WILLIAM H. GRIFFIN, *Respondent and Cross-appellant,* v. TIMOTHY H. McCARTHY, *Appellant.*[1]

[1]Reported in 24 P. (2d) 595.

*Caldwell & Lycette,* for appellant.

*Venables, Graham & Howe* and *Bernard Goodwin,* for respondent and cross-appellant.

TOLMAN, J.—The plaintiff brought this action to recover for services rendered as an attorney at law during the six months period from January 1, 1931, to July 1, 1931, which services were alleged to be of the reasonable value of $17,345. A payment on account of $2,500 was admitted, and the prayer of the complaint was for judgment for $14,845, together with interest at the legal rate from July 1, 1931, upon the whole sum earned until the partial payment was made and like interest on the balance thereafter.

The cause was tried to the court, sitting without a jury, resulting in findings of fact and conclusions favorable to the plaintiff, to the effect that services were rendered of the reasonable and agreed value of $10,100, and that, after deducting the payment, the plaintiff was entitled to recover $7,600, with interest from January 1, 1932. A judgment accordingly followed in due course, from which the defendant has appealed, and from which the plaintiff has taken a cross-appeal as to that part only of the judgment denying interest from July 1, 1931, as prayed for. We shall refer to the parties by name.

The evidence reveals a story very interesting to lawyers especially. We suppress the strong temptation to expatiate upon the facts.

Mr. Griffin is a lawyer formerly practicing in New York City, but for some years domiciled in Paris, France, and there practicing as a counsellor and adviser to his countrymen abroad and others who may seek his services. The defendant, Mr. McCarthy, is a wealthy American, also domiciled in Paris, who became involved in litigation in this state which cul-

minated in the case of *Lacey & Co. v. McCarthy*, 168 Wash. 579, 13 P. (2d) 11.

The parties seem to have met in Paris as early as 1929, and Griffin performed some services for McCarthy, which were promptly paid for as bills were rendered. In September, 1930, McCarthy directed Griffin to go to America, chiefly to look into matters pertaining to the *Lacey* case and make preparation for its defense. He agreed to pay all the expenses of the trip, plus one hundred dollars per day for Griffin's time for every day he should be absent from Paris on the trip, and McCarthy seems to have voluntarily suggested that Mrs. Griffin accompany her husband on the American trip at his (McCarthy's) expense. All this was done, and Griffin returned to Paris about January 1, 1931. The expenses of his trip and his honorarium of one hundred dollars per day were paid in full by McCarthy.

After he returned to Paris, Griffin began reporting the results of his American trip to McCarthy, and as Mr. McCarthy was totally deaf and could be informed only by writing answers to his numerous questions, it may be cheerfully admitted that the process was long and laborious, rendered more so by Mr. McCarthy's peculiarities and by the fact that he sometimes prolonged these interviews so that they became all night sessions. Griffin made charges for the time thus consumed according to the schedule which he used in his general practice of advising tourists, with increased rates for night work. When the nature and amount of these charges were brought to McCarthy's attention, he was dissatisfied therewith, and suggested that the rate of one hundred dollars per day for Mr. Griffin's time be continued for the thirty-one days of January, 1931, in full payment therefor. Mr. Griffin sought to limit or condition his acceptance of this ar-

rangement, but from the whole record we are well satisfied that the minds of the parties met upon this agreement, sufficiently at least to warrant the fixing of the value of services rendered for the month of January at $3,100.

After January, there was nothing further for Mr. Griffin to do, and he did nothing except to prepare for, and to participate in, the taking of Mr. McCarthy's depositions for use in the trial of the *Lacey* case. We are quite satisfied, after weighing all of the evidence from every standpoint, that, notwithstanding the eccentricities of Mr. McCarthy and allowing for all of the time and labor thus consumed, anything more than $1,500 as an allowance for this service would be unreasonable and excessive.

We find, therefore, that Griffin earned a total of $4,600 during the period involved, from which must be deducted the partial payment of $2,500, leaving a balance unpaid of $2,100.

In reaching this conclusion, we are not unmindful of the facts found by the trial court, but we differ from the trial judge, not so much on any question of fact as on the conclusions to be drawn from the established facts, a well recognized exception to the general rule. See *Pacific Coast Cement Co. v. Metropolitan Casualty Ins. Co. of New York,* 173 Wash. 534, 23 P. (2d) 890, and *Watson v. Johnson, ante* p. 12.

If questions of fact enter into this difference at all, it is perhaps because the trial court was more greatly impressed with the Paris standard of the reasonable value of legal services than are we. True, one who takes himself abroad to serve Americans who prefer to live abroad may be and, no doubt, is entitled to a somewhat higher scale of pay than he would earn normally at home, but it must be remembered that the services were rendered in a cause pending in this

jurisdiction, and Griffin, having the right to sue in Paris, where the services were rendered, exercised his own choice to sue here. Under such conditions, not the Paris standard alone, but our standard of the values as modified by the fact that the services were rendered abroad is, we think, the standard which must govern.

■ ■ This leaves only the question of interest. It is apparent from the record that Mr. McCarthy would have promptly paid $3,100 for the services rendered in January, and the delay in payment was due wholly to Mr. Griffin's unwillingness to accept that sum as payment for that period. Almost five-sixths of the amount earned in January was paid shortly thereafter, and a tender of the further sum of six hundred dollars in full for that period would have been a wholly useless gesture.

■ The amount earned after January was wholly unliquidated. We know of no rule which under these facts would warrant or require the allowance of interest before the day of judgment.

The judgment of the trial court will therefore be modified by reducing the amount to twenty-one hundred dollars, which amount will draw interest from the date of the original judgment at the legal rate.

Remanded for modification as herein directed.

BEALS, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.